## EDWARD A. SHERMAN, APPELLANT, v. WILLIAM H. CLARK, RESPONDENT.

A PARTY WITHOUT RIGHTS CANNOT COMPLAIN OF ERROR. No person is in a position to complain of error, who does not show by his pleading that he has some cause of action or ground of defense.

No EQUITABLE INTERFERENCE WHERE REDRESS AT LAW ADEQUATE. When there is a complete and adequate remedy at law, affording full redress, equity will not interfere.

Sherman *v.* Clark.

INJUNCTION A PREVENTIVE REMEDY. An injunction is only issued to prevent apprehended injury or mischief, and affords no redress for wrongs already committed.

DAMAGES INCIDENT TO INJUNCTION. A remedy for injury already committed, though sometimes given as an incident to an injunction, is only given where a sufficient showing for an injunction is made out, and the injury resulted from the act enjoined.

PROBABILITY OF INJURY TO JUSTIFY INJUNCTION. To make out a case for injunction, it must appear that there is at least a reasonable probability, not merely a bare possibility, that a real injury will occur if the writ is not granted.

ACTS NOT AUTHORIZING INJUNCTION. Sherman, a stockholder in a mining company, filed a bill against Clark, who united in himself the character of superintendent of the mine with those of secretary, trustee, and treasurer of the company, alleging that the latter had seized and retained the books, ousted and ejected the president from his office; removed the office of the company without consent of the board of trustees; wrongfully canceled stock of another stockholder and transferred it to himself; deposited money belonging to the company with merchants and refused to pay company debts with it; was applying for a patent to the mining ground; working the mine without the control of the board of trustees or president, and threatening to continue his said unlawful acts; and asked for an injunction to restrain him from interfering with the books and property, and exercising any of the functions of superintendent, secretary, trustee or treasurer: *Held*, that no showing was made for an injunction.

INJUNCTION AS TO USURPATION OF OFFICE. The right to an office in a company cannot be tried upon an application for an injunction; nor if an officer be wrongfully removed from his office can he be restored to it by injunction.

INJUNCTION AS TO REMOVAL OF MINING OFFICE. Though a threatened, unauthorized, and injurious removal of the office of a mining company, by a person acting as superintendent and secretary, might be enjoined, an injunction would not reach the case of a removal already made.

INJUNCTION AS TO TRANSFER OF MINING STOCK. Though a mining secretary, who illegally issues stock to himself, might be enjoined from transferring such stock to a third person, it could only be done on a proper showing of the illegality of the issuance and proposed transfer.

DEPOSIT OF COMPANY MONEY. Though it may be safer for the treasurer of a mining company to deposit funds of the company with a banker in the usual way, rather than with a merchant, yet in the absence of any showing to the contrary, there is nothing making it his duty to deposit with one more than the other.

PAYMENT OF COMPANY DEBTS. Though the treasurer of a mining company, having funds on hand, may refuse to pay just claims against the company, his refusal cannot be adjudged a dereliction of his duty, without a showing that he had authority, and that it was his duty to pay.

APPLICATION FOR PATENT OF COMPANY LAND. Though there may be circumstances which would make an application by the secretary and superintendent of a

mining company for a patent to the mining ground of the company injurious and prejudicial, such application cannot be so adjudged without a showing of the facts rendering it so.

SUPERINTENDENT ASSUMING TO WORK MINE. It does not follow from the mere fact that a superintendent of a mine is working it without any control of the board of trustees and president, that it is being worked injudiciously or injuriously to the shareholders.

"CONTINUING AND THREATENING TO CONTINUE." If an injunction would not lie to restrain the doing of the acts set forth in a complaint for an injunction, the continuing and threatening to continue such acts cannot aid the case.

APPEAL from the District Court of the Sixth Judicial District, Lander County.

This was a suit for an injunction. The complaint, which set out facts and allegations substantially as stated in the opinions, was presented to the Hon. W. H. Beatty, Judge of the Court below, who, on *ex parte* motion of attorneys for plaintiff, issued a restraining order, and an order to show cause why an injunction should not be granted as prayed for. On the day fixed for the hearing, both parties appeared with counsel and witnesses, and the defendant having filed his answer, the Court proceeded to hear their respective allegations, their testimony, which was both oral and documentary, and arguments, after consideration of all which the restraining order was dissolved and the injunction refused.

*D. Cooper*, for Appellant.

*George S. Hupp* and *Uren and Croyland*, for Respondent.

By the Court, LEWIS, J.

The facility with which injunctions have been obtained from the Courts in this State seems to have made the application for them almost a matter of course in every conceivable character of case.

When the law appears to afford no specific remedy for some petty annoyance or imaginary wrong, this writ is applied for as if it were the great sovereign and infallible remedy—the legal panacea for every ill that may arise in the complicated affairs of man. But unfortunately, perhaps, the writ of injunction does not possess these marvelous virtues and limitless powers. Its office is limited, and it is generally employed only as an auxiliary remedy.

In disposing of this case, we have not found it necessary to look into the evidence or proceedings of the Court below, because in our opinion the bill makes no showing entitling the plaintiff to the relief sought by him. Such being the case, the judgment denying the injunction was correct, and cannot be reversed by this Court. For no person is in a position to complain of error who does not show by his pleading that he has some cause of action or ground of defense.

Before specially discussing the sufficiency of the plaintiff's bill in this case, it may be well to state some of the general and fundamental rules governing the issuance of the writ of injunction, and which have a bearing upon this case.

The writ is exclusively an equitable remedy. But equity is chary of its powers: it employs them only when the impotent or tardy process of the law does not afford that complete and perfect remedy or protection which the individual may be justly entitled to. When therefore it is shown that there is a complete and adequate remedy at law, equity will afford no assistance. "When a party has a remedy at law," says Mr. Hilliard, "he cannot come into equity, unless from circumstances not within his control he could not avail himself of his legal remedy." (Hilliard on Injunctions, Sec. 23.) "That full compensation can be had at law is the great rule for withholding the strong arm of the Chancellor," says Mr. Justice Thompson, in *Rusey* v. *Wright*, (31 Penn. 396). See also *Thompson* v. *Matthews et als.*, (2 Edwards Ch. R. 213 ; 9 Paige R. 323). Before refusing its aid upon this ground, however, it must appear that the legal remedy is complete and adequate to afford the complainant full redress ; but when that fact does appear, equity at once relinquishes all control over the case, and leaves the party to pursue his legal remedy.

Another rule having an important bearing upon this case is, that an injunction is only issued to prevent apprehended injury or mischief, and affords no redress for wrongs already committed. (Practice Act, Sec. 112.) "Injunction," says the learned author already quoted, "is said to be wholly a preventive remedy. If the injury be already done the writ can have no operation, for it cannot be applied correctively so as to remove it. It is not used for the pur-

pose of punishment, or to compel persons to do right, but simply to prevent them from doing wrong." (Hilliard on Injunctions, Sec. 5.) See also *Watson* v. *Hunter et al.*, (5 Johnson's Ch. R. 169). A remedy for an injury already committed will sometimes be given as incident to the injunction, as in *Garth* v. *Cotter*, (1 Vesey, 528). A decree for an account of the waste already committed was granted as an incident to the injunction to stay future waste. But it is only in cases where a sufficient showing for an injunction is made out, and an injury has already resulted from the act enjoined, that such a remedy will be afforded.

It must also be made to appear that there is at least a reasonable probability that a real injury will occur if the injunction be not granted. This extraordinary writ should not be issued upon the bare possibility of injury, or upon any unsubstantial or unreasonable apprehension of it. The injury, too, must be real, and not merely theoretical.

If the propositions, or rules, thus stated be correct, it is clear that the plaintiff's bill is utterly insufficient to entitle him to the relief prayed for.

The several specific causes of complaint which it contains will be noticed in the order in which they are presented in the bill. After stating that he is a stockholder in the Magnolia Gold and Silver Mining Company, the plaintiff alleges that: "The defendant is now, and for a long period of time has been, the acting Superintendent of such Magnolia Gold and Silver Mining Company, and is now, and has been for a long time acting as Trustee, Secretary and Treasurer of said company; that by law the said Magnolia Gold and Silver Mining Company is entitled to three Trustees, and it is provided by law that the business of said corporation should be managed and conducted, and the mine of said corporation worked, under the supervision and control of said Board of Trustees. That the office of one of said Trustees has been declared vacant, and that one J. W. Brown is a Trustee and President of said corporation, and that there are no Trustees of said corporation but said Brown and the defendant herein." And thus plaintiff alleges the defendant "has attempted to remove his co-Trustee and the President of the said company, and has published notices in the public

press to that effect, and has seized the books and all the property of the said company, and retains possession of them, and refuses to give them up to the said President and Trustee aforesaid, and prevents him from participating in the control or management thereof, and has ousted and ejected him from his said offices as President and Trustee, and refuses to permit him to discharge any of the duties of the said offices."

This allegation begins by charging that the defendant had *attempted* to remove Brown from his office. He seems, however, to have been rapid in his manœuvres, for we find at its close that Brown is removed and no longer occupies his position. To be removed from his office was, perhaps, an injury of which Brown might justly complain, and the law, upon a proper showing by himself, would doubtless restore him; but that it is a ground for an injunction is by no means so clear. It is not claimed that the defendant is himself acting as President. His moderate ambition contents itself with four positions in the corporation, and exhibits no desire to fill the fifth. But if it were shown that he was discharging the duties of President of the corporation, that of itself would not authorize the issuance of an injunction upon the application of a stockholder. It would be necessary to show that he was doing, or threatening to do some act which, if done, would result in great or irreparable injury to the corporation. As we have already stated, the writ of injunction is a preventive remedy, and only issued to restrain the commission of some real injury. Brown could not be restored to his office by a proceeding of this kind; a *mandamus* or *quo warranto* would be the proper proceeding for that purpose. We could not in this suit restore to him the books and papers which may have been taken from him, nor anything else belonging to his office. Whether he is entitled to anything belonging to the office, or has a right to do anything connected with it, can only be determined by trying his right to the office itself, which cannot be done upon an application for an injunction. But the prayer of the bill is: "That the said defendant, his agents, servants and employés, be enjoined and restrained from interfering with the books and other property of the said Magnolia Gold and Silver Mining Company, and from exercising any of the functions of Treasurer, Trustee, Superintend-

ent or Secretary, except to hold possession of said books and papers of said company, subject to the order of the Court." In other words, the Court is asked to stop all the operations of the corporation, to virtually remove the defendant from four offices, and to prohibit the keeping of any books for the concern, because the defendant refuses to allow Brown to act as President and Trustee. To grant the prayer of this bill would look very much like punishing the stockholders by the closing up of their mine for the misconduct of one of the officers; a misconduct, too, which does not appear to be in anywise prejudicial to the company.

Whether Brown, as President or Trustee, would be entitled to the possession or control of any of the books which the defendant is charged with having seized, does not appear. The Presidents of such institutions are usually things of ornament rather than utility, and there is nothing in the bill in this case to satisfy us that that officer in the Magnolia Company is an exception to the general rule. The plaintiff's bill does not show that the defendant was not alone entitled to the control of the books taken by him, nor that the keeping of them by him will result in any serious injury to the company, whilst it is self-evident that, to prohibit the working of the mine and the keeping of the books would be likely to occasion such injury. An injunction may probably be issued on the application of a stockholder to restrain the doing of some act by the officers, which, if done, would result in injury to the company; but if the act be done, an injunction can afford no remedy. If an officer is wrongfully removed from his office it cannot restore him to it; if the books are already taken, this writ cannot compel their return, nor restrain interference with them, unless such interference is likely to result in real injury to the corporation, which in this case is not shown. We conclude, therefore, that there is nothing in this first charge against the defendant warranting the issuance of the writ.

The substance of the next allegation is, that the defendant, without the consent of the Board of Trustees, removed the office of the company from the place established for it to some other part of the City of Austin, and from place to place, thereby concealing the same from the said President and stockholders of the said company.

Well : what remedy an injunction can afford for the itinerant pro-
clivities of the office of the Magnolia Company is difficult to dis-
cover.   For aught that appears in this case, the defendant had a
right to move the office as often as he chose, or to whatever locality
might suit his fancy.   Such being the case, he might have carried
it in his breeches pocket, or his hat, and we know of no way in
which the writ of injunction would aid the plaintiff in discovering
it.   If without the authority or the right to do so the defendant
was about to remove the company's office, and it was shown that
such removal would occasion damage to the stockholders, an injunc-
tion might be granted.   But no such representation is made.   The
office it seems has already been moved, and a future removal does
not seem to be apprehended ; but if it were, the removal of an
office the location of which is not known to the plaintiff cannot re-
sult in very serious injury to him, and may possibly enable him to
discover it, whilst at present it appears to elude all search.   How-
ever, the object of this proceeding is not to restrain the peregrina-
tions of the company's chief office, but to enjoin the defendant from
interfering with the books and other property belonging to the cor-
poration : hence this allegation in no wise tends to further or aid the
object of the bill.   It is then alleged that : " The defendant hav-
ing so ousted the President and Trustee of said company, and
having entire possession of the books and other property of said
Magnolia Company; wrongfully and unlawfully and without au-
thority has canceled stock of said company belonging to J. W.
Brown, a stockholder in said company, and has transferred stock of
said company belonging to said Brown to himself, without the
knowledge of the said Brown." ,

If in fact the defendant has, as charged in this count, unlawfully
issued stock to himself, the company has a complete remedy at law
against him ; and with a proper showing an injunction would issue to
restrain him from transferring such stock to any third person: but that
is not the remedy sought by the plaintiff.   Nor does this allegation
make a sufficient showing to entitle him to that remedy, even if he
had asked it.   To be sufficient for that purpose a full statement of
the facts constituting the illegality of the stock issued would be
necessary, and he might be enjoined from issuing any more stock,

if it were satisfactorily shown that he was in fact unlawfully doing so ; but the simple charge that he is unlawfully and wrongfully issuing stock to himself is not sufficient. That an act is wrongful or unlawful is usually a conclusion of law. The facts logically showing that act, or acts, to be so unlawful should be stated. It should be shown whose duty it is to issue stock, and under what circumstances it is authorized to be issued. There are no facts stated here to justify the conclusion that the defendant had not the right to issue the stock to himself. However, as the remedy sought is not an injunction to restrain the transfer of the stock so illegally issued, nor to restrain a further issuance, any further discussion of that portion of the allegation may be dispensed with. The cancelation of stock belonging to Brown, and the transfer of it by the defendant to himself, are acts for which Brown has his legal remedy if he chooses to pursue it, but it gives the plaintiff no cause of action. If Brown himself does not wish to complain, the plaintiff, who is simply a stockholder in the company, has no right to complain for him. Brown himself could not obtain an injunction upon such a showing. He might recover his stock, or damages for its conversion, in a proper proceeding, but he could neither obtain the return of his stock nor its value in damages through the medium of an injunction. To enjoin the defendant from interfering with the books of the company would not restore Brown's stock, nor does it appear that there is any more stock that the defendant can cancel ; an injunction, therefore, would seem to be useless.

The next charge against the defendant is, that he deposited money which he had in his possession, belonging to the company, with a mercantile house in the City of Austin, and while such money was so on deposit, refused to pay certain creditors of the company their just claims against it. The plaintiff's bill gives no reason why the defendant should not have deposited the money as he did. In the absence of special circumstances, we presume it was his duty to deposit it where it would be most secure. That he has not done so, does not appear from the bill. The defendant may have considered Cook Brothers, with whom he made the deposit, as safe as any of the banking institutions of the city, and we know of nothing making it his duty to deposit it with one more than the

other—with a banking more than with a mercantile house. Of course, it is safer for the officer to follow the usual custom; but if he does not, it cannot be considered a breach of duty, unless it be made to appear that the course pursued by him is not as safe as that usually pursued. But he refused to pay the creditors of the company whilst its money was so deposited, and by reason of that fact it is alleged that the corporation, and the plaintiff, especially, were greatly damaged. In what particular manner this great damage was occasioned, is not shown; whether it was a real pecuniary injury to the company, or only a damage to its credit, is not yet made apparent. What if it were both? it does not follow that the defendant is blamable, for the plaintiff's bill does not inform us that it was the defendant's duty, or indeed that he had any authority whatever to pay the claims spoken of. If it were specifically alleged that it was made the duty of defendant to pay all just claims against the company, the bill would then perhaps tend to show a dereliction of duty on his part; but as it now stands, it does not show even the slightest deviation from his duty in this respect.

The next charge against the defendant is, that he is applying for a patent under the laws of the United States for the Magnolia mine, and is thereby involving the company in proceedings which will, if persisted in, result in great damage to the stockholders. If the application for the patent is on behalf of, and for the benefit of the company, the defendant would seem to be simply discharging his plain duty. An application for a patent in the regular way, and in accordance with law, appears to be an advantage rather than a detriment to the company. There may be some circumstances connected with the matter which would place a different phase upon it; but nothing of the kind appears in the bill. We find the simple allegation, the substance of which is stated above. If the application for a patent was likely to be prejudicial to the company, the facts showing such to be the case should have been fully stated, so that the Court might itself judge whether it would be injurious or not. The allegation in its present form is nothing more than an expression of opinion by the plaintiff that the application for a patent would be injurious to the company. That is not sufficient; the

facts logically showing that such would be the effect should have been stated.

It is next alleged that defendant is "working the said mine for the said company without any control from the Board of Trustees empowered to supervise the working of the same, and contrary to the order of the said President." It is not alleged that the mine is being worked in a manner injurious to the stockholders. Nor indeed is there anything in the bill to justify the conclusion that the mine is not being worked in the best manner possible, and to the entire satisfaction of all the stockholders, except the plaintiff. The President probably has no more authority or power with respect to working the mine than the defendant has. That the defendant refuses to submit to the control of the Board, would not therefore seem to be a very strong ground for the interposition of equity. If the defendant is managing the mine judiciously, and in furtherance of the best interests of the stockholders, it would be unjust to stop all operations simply upon the application of one dissatisfied stockholder; and upon such a showing as is made here, it cannot be done.

The bill concludes with the allegation that the defendant is continuing, and threatening to continue, the unlawful and wrongful acts complained of, to the great damage of the stockholders, and especially to the plaintiff. But as we have endeavored to show, none of the acts complained of authorizes the issuance of an injunction; most of them not even showing the slightest cause of complaint. To allege that the defendant is continuing them cannot therefore aid the plaintiff's case, and the bill taken as an entirety can satisfy no one that any great injury or damage to the company is likely to result from the possession and control of the books, and the management of its property by the defendant.

Although it is quite apparent from the record that the New York and Austin Silver Mining Company should have been made a party to this action, still as that question was not raised by counsel, and as our present conclusion is against the plaintiff, it was thought best to pass upon the merits of the bill itself.

The judgment of the Court below is affirmed.

By JOHNSON, J.

The affirmance of the order of the lower Court meets my approval on this distinct ground—that the plaintiff shows no right in himself to maintain the action.    Suit was brought by Sherman as plaintiff in his individual name, whereas he shows by the complaint that the seventy-nine and a half shares of Magnolia Company stock were held by him exclusively in the character of a trustee for the Austin Silver Mining Company—a foreign corporation.    It is not even shown by the pleading that the plaintiff is a stockholder, or has an interest in either of the corporations; nor are there any special circumstances appearing to authorize him to wage a contest with defendant concerning any of the alleged grievances.    To all intents and purposes the plaintiff by his own showing, is so far an *outsider* that he could not properly bring the action in his individual name.    This point it is true was not taken by respondent on the argument, nor does the record disclose the particular grounds—as it need not—on which the Court below refused the injunction. But if the decision of the District Court be right, although the reason be *wrong*, surely this Court should not disturb it.    Much less therefore the propriety of doing so, because the respondent's counsel overlook a material point in the case, and perhaps the most tenable ground upon which the decision can be sustained. The duty of this Court, as I understand it, is to decide upon the entire record of the case as presented, and not in conformity with the peculiar views and arguments of counsel.    The ruling of the District Court, in refusing the injunction, is clearly defensible on the ground stated, whereas upon the points discussed—some of them at least, in my view—it may be more questionable.    Yet as this appeal is merely from an interlocutory order, pending the trial of the cause on its merits, I shall not anticipate the District Court in passing upon any of these questions now.