[No. 9001.   Department Two. — February 25, 1886.]

## E. H. BARNES, APPELLANT, v. S. A. MARSHALL, RESPONDENT.

RIPARIAN PROPRIETOR — ERECTION OF BULKHEAD — THREATENED CHANGE
IN CHANNEL OF STREAM. — A riparian proprietor has a right to protect
his land from a threatened change in the channel of the adjoining stream
by erecting along the border thereof a bulkhead as high as the original
bank of the stream.

APPEAL from a judgment of the Superior Court of
Sonoma County.

The facts are stated in the opinion.

*Henley & Oates,* for Appellant.

A riparian proprietor cannot erect any structure along
the bank of the adjoining stream which will increase
the injury of ordinary floods, or interfere with the nat-
ural flow of the water.   (*Casebeer* v. *Mowry,* 55 Pa. St.
419; Angell on Watercourses, sec. 534; *Rex* v. *Trafford,*
1 Barn. & Adol. 874; *Gerrish* v. *Clough,* 2 Am. Rep. 165;
*Scranton* v. *Brown,* 4 Barn. & C. 485; *Rex* v. *Lord Yar-
borough,* 3 Barn. & C. 91; *Adams* v. *Frothingham,* 3 Mass.
352; S. C., 3 Am. Dec. 151.)   The adjoining proprietor has
a right to have the stream pursue its natural flow. (Angell
on Watercourses, sec. 90; *Wordsworth* v. *Tillotson,* 15 Conn.
366; *Tyler* v. *Wilkinson,* 4 Mass. 397; *Jones* v. *Soulard,*
20 How. 41; *Rix* v. *Johnson,* 5 N. H. 520; S. C., 22 Am.
Dec. 472.)

*Rutledge & McConnell,* for Respondent.

The defendant had a right to prevent the threatened
change in the channel by erecting a bulkhead.   (Angell
on Watercourses, secs. 333, 334.)

FOOTE, C. — An action for the removal of a nuisance,
and for a perpetual injunction against the erecting or
maintaining thereof.

The defendant had judgment in his favor and for costs, and the plaintiff appeals upon the judgment roll alone.

All the issues raised by the pleadings were passed upon by the findings, although in some respects the latter might have been expressed with more perspicuity.

By them it becomes apparent that the plaintiff and defendant own separate parcels of land, lying opposite to each other on the banks of the Russian River in Sonoma County, the river being the common boundary between the two.

For some years prior to 1879, the river had been washing off portions of its bank lying upon the defendant's land. At a certain point on said land the stream having, as it were, slowly eaten into and carried off a portion of its bank on defendant's front, was threatening to cut a new channel through his land, which would have eventuated in the carrying off of some acres thereof. To prevent this, the defendant built a bulkhead on his own land, which was carried away, in the main, by a flood. He then, in October, 1880, constructed another slightly nearer the river, and again this was partially destroyed by the floods of the succeeding winter, and in the washing out caused thereby, quite a pool of water was formed in and upon the defendant's land, almost as deep as the bottom of the river, which at low stages thereof remains full of still water. Upon the subsidence of the floods, the river returned to its former channel, a pool of water remaining at the place where the bank and the spiling of the bulkhead had been washed away.

In October, 1881, the defendant again built a bulkhead of the same character as the one previously erected, commencing it with the upper end of the part of the old one still remaining, and running it in such a way as to carry it through the pond above mentioned, and some fifteen or twenty feet back of the former bulkhead, and continued by running it through an excavation of his high bank.

The last bulkhead is not quite so high as the former, and is somewhat lower than his original bank (now washed off) as it stood in 1879.

The plaintiff's bank does not appear to have been lowered in any way, and a sand bank on his side has risen higher than the bulkhead on the defendant's side. At high water the defendant's bulkhead does not prevent the waters from overflowing it, and has no more injurious effect on the plaintiff's land than had the bank of the river as it stood in 1880; and the land of defendant, notwithstanding the bulkhead, is overflowed at high water as it was before its construction. By removing the bulkhead, the stream would probably cut a channel through defendant's land, and thereby, perhaps, relieve the plaintiff of apprehended danger. He, however, had suffered no damage up to the institution of this action.

It therefore appears that the contention of plaintiff is, that the defendant cannot reconstruct his bank, washed off by the river, to such a height as the bank formerly stood, and thereby prevent the river from running through his land, which last, if permitted, would, by shortening the stream, take the water off of plaintiff's bank, and render his land less liable to overflow. And he claims that the river must be permitted, without obstruction, to change its current, even if thereby it cut a new channel through and over the defendant's land.

This position is not tenable.

The defendant had a right to protect his land from the threatened change of the river's channel, by building a bulkhead as high as was his original bank before it washed off. He thereby took no right from the plaintiff; he simply attempted to maintain his own. (Angell on Watercourses, sec. 333.)

"A riparian proprietor may in fact legally erect any work to prevent his lands from being overflowed by any change in the natural state of the river, and to prevent the old course of the river from being altered." (*Farquaharson* v. *Farquaharson,* 3 Bligh Pr., N. S., 421, 422.)

According to the findings, the pond left from the high water on defendant's land was not a channel of the river, but only threatened to become so,—which the defendant was seeking to prevent. And this he had a right to do, if he did not thereby interfere with the ancient channel of the stream. (Angell on Watercourses, sec. 108.)

There is no error in the record, and the judgment should be affirmed.

BELCHER, C. C., and SEARLS, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.