## FRED PLAGGE v. DICK MENSING, Appellant.

126  737
127  534
126  737
131  127

**Drainage:** DAMAGE: INSUFFICIENCY OF EVIDENCE. The owner of lower land cannot restrain the owner above him from tiling his open ditches, on the theory simply that the location of the tile below the surface would drain a greater area more rapidly and carry additional water onto plaintiff's land which otherwise would evaporate or be absorbed, in the absence of evidence showing that the tiling increased the flow and caused actual damage. Evidence reviewed and fails to show an increased injury.

Defective record: COSTS. Although an abstract is not so defective that a motion to affirm or strike should be sustained, still where the questions and answers are needlessly set out the cost of printing may be taxed to appellant on reversal.

*Appeal from Franklin District Court.*— HON. J. H. RICHARD, Judge.

THURSDAY, MARCH 9, 1905.

ACTION to enjoin the defendant from maintaining certain drains in his land. Decree as prayed, and defendant appeals.— *Reversed.*

*Taylor & Evans,* for appellant.

*E. P. Andrews,* for appellee.

LADD, J.— The defendant is owner of the southwest quarter and the plaintiff the northwest quarter of the same section of land. The natural drainage of both farms is toward the north. In the fall of 1901 defendant laid three-inch tile from the pond R to 2, and also from the pond Q to 2, on the accompanying map, and five-inch tiling from 2 to N. He also excavated a straight ditch from the pond N to M, and laid three-inch tile from the pond M to H H. Some witnesses testified that the pond S was drained into the R, but this was a mistake, as the tiling of that was to the southwest. The complaint is that the result of this tiling was to cast more water than formerly upon the plaintiff's land and flood it. The evidence fails to sustain this claim. Prior to the laying of the tile there was a ditch or depression along which the water passed from R to N; also a ditch or swale from

*Marginal note:* 1. DRAINAGE: damage; insufficiency of evidence.

Q to N. There is some discrepancy in the record as to the extent of the ponds R and Q, plaintiff's witnesses evidently including somewhat of the territory drained by each and sometimes under water, and those of defendant estimating only the portions filled with water after drained by the old ditches. No doubt the water covered considerable ground at times, but we are satisfied that neither pond covered to. exceed an area of three or four rods square, with water sixteen inches deep at the lowest place when it ceased to run off through the ditches. Even this water disappeared in dry weather. The swale extended from N, over the plaintiff's land and that of another, to a creek into which it emptied. Before it passed down E E from N to the large pond, G, however, it filled N by passing through a depression, and the water in this latter pond, when it overflowed, went down the swale, T, to the pond G. Whether H H was a pond is uncertain, but we are inclined to think that water sometimes stood there, and that there was somewhat of a depression from H H to M. How much water flowed through this drain, and whether the tile materially increased it, we have no means of knowing. The pond N is between ten and twenty rods, and M five rods, from the division line. Below these to the north, on plaintiff's land, are a number of small ponds and the large one previously mentioned.

The plaintiff estimates that the water from defendant's land flooded two and one-half acres before the tiles were laid, and covered five acres in 1903. The renter in possession testified that there were one and one-half acres of oats he could not cut with the harvester, but mowed, and that he had trouble to cut two to two and one-half acres of timothy; that some of it he could not reach to haul away. The evidence shows conclusively that the crops on this five acres had suffered more or less from having too much water in former years, and that 1902 was an unusually wet season. The excessive rainfalls fully explain the condition of plaintiff's land, and evidence is practically undisputed that it·

was merely affected like other portions of the same farm lands in the vicinity. We can discover no ground for saying that more water flowed upon it to its injury as a result of laying the tiles, unless we accept certain theories on which the trial judge seems to have based the decree. As stated, the tiles were laid in the line of the old ditches, and the court found: (1) That these would carry water which would otherwise have stood in the pond and been evaporated and absorbed by the earth; (2) that the tiling, being located below the surface, would drain the water from a wider area than the ditch; and (3) that it would carry the water off more rapidly. Theoretically this may be correct, but the record contains nothing to indicate how much more rapidly drainage would be effected through the tiles than in the open ditches, or how much less water would have been collected, or how much more water would be taken up by way of absorption or evaporation, had the tiling not been laid. While there was testimony that tiling would drain the land more quickly than ditches, it does not appear that the water will flow more rapidly or for a shorter period from the lower end of the tiling than it did from the ditch. As the tiling drains the earth, the water reaches it shortly after rain begins to fall, while it may not flow in the shallow ditch until the soil is filled to the surface. After the water which would stand in the small ponds had once been drained by the tiling, the only difference as to these would be that effected by evaporation and absorption, which, of course, would go on in ponds M and N. There were no measurements indicating differences in elevations, and, though the depth of the drain may determine the area which will be drained thereby, this necessarily depends somewhat on the nature of the soil and topography of the country.

Enough has been said to indicate our opinion that the issue as to whether the laying of these drains worked substantial injury to plaintiff was a matter of proof, and not to be deduced from mere theory. The court concluded that,

as defendant's land is now dry at all times, even though plaintiff's was naturally wet and 1902 an unusually wet season, and that it "may be said not to be conclusively established that the difference in the drainage noted was the direct and immediate cause of the damage claimed by plaintiff in his testimony," yet "that the natural and ordinary result of the system of drainage put in by defendant would be to produce the wetter condition of plaintiff's land, and that, if any presumption is to be indulged in, it is in favor of the plaintiff, and against the defendant, as to that. It also appears that the result actually did take place, that is, that plaintiff's land was wetter in a wet time, and at such places and under such circumstances that it could have been caused directly by the tiling or drainage complained of by plaintiff."

Surface water is a common enemy, and the owner of land has the right to fight it in any possible way he may choose, provided he does so without working injury to his neighbor. If, instead of allowing the water to flow along its natural course to collect in ponds, he caused it to pass through a ditch or tile into another pond, all on his own land, no presumption is to be indulged that this will result in injury to the servient estate. Controversies of this kind must be determined from the evidence presented, and not upon mere theories as to the probable effect of draining by tiles instead of ditches, on the quantity of water cast on another's land or the manner in which this is done. That injury might have resulted from defendant's drains is not enough. The burden of proof was on plaintiff to show, as a basis of the relief asked, that these did in some way render the land less valuable for some purposes than before. He failed to do so. The only witness who testified as an expert thought the change would not affect the flow of water from the ponds N and M over the division line. Because of the failure to prove either a change or increase of the flow of water from defendant's land on that of plaintiff as a result of the tiling,

the writ of injunction should have been denied.   See *Collins
v. Keokuk,* 91 Iowa, 293; *Dorr v. Simerson,* 73 Iowa, 89.

The abstract is not so defective that the motion to af-
firm or to strike should be sustained.   It is not, however, in
2. Defective    compliance with the rules, as in large part it
RECORD: costs.  unnecessarily sets out the questions and an-
swers, and, owing to this violation, the costs of printing the
same will be taxed to appellant.— *Reversed.*