HENRY KECK, DARIUS KEY and T. O. WILLIAMS, v. J. A. VENGHAUSE, ISAIAH DOWNS, and others, appellants.

| 127 | 529 |
|-----|-----|
| 127 | 747 |
| 127 | 748 |
| 127 | 529 |
| 131 | 516 |
| 127 | 529 |
| 133 | 645 |

**Waters:** EMBANKMENT OF STREAM: OVERFLOW: INJURY TO ANOTHER. A riparian owner cannot lawfully embank against the natural overflow of an inland stream, where the same will cause an increased volume of water to flow upon the land of another to his injury.

*Appeal from Louisa District Court.* — HON. W. S. WITHROW, Judge.

TUESDAY, JUNE 6, 1905.

Suit in equity to restrain the building of a levee along a natural water course. There was a judgment for the plaintiffs, from which the defendants appeal. — *Reversed.*

*H. O. Weaver* and *C. A. Carpenter,* for appellants.

*Arthur Springer* and *Hale & Hale,* for appellees.

SHERWIN, C. J.— The facts in this case are practically undisputed, and are briefly as follows: The defendants M. McClurkin and J. A. Venghause are the owners of farm lands in the southeast quarter of section 1, township 73, range 4, and the other defendants are the owners of farm lands either adjoining or near thereto. The plaintiff Keck is the owner of the northeast quarter of section 32, township 74, range 3, and the plaintiffs Key and Williams own lands in sections 36 and 31 of the same township and range. Otter creek is a creek of considerable size; one of its branches having its source about seven miles southwest of the McClurkin land, and the other or west branch thereof having its source about six miles west of the McClurkin land. The two branches come together on the McClurkin land, and the stream then flows northeast into a water course known as the " County Ditch." The creek is a natural water course, with a well-defined channel, which is from ten to fourteen feet deep, and from forty to fifty-five feet wide where it passes through section 1, township 73, range 4; and water flows there continuously and continues on through the county ditch into the Iowa river. The depth and width of the channel are about the same for a mile and a half or two miles down the stream from McClurkin's, but from there it gradually shallows until it reaches Keck's land, where it is only about 5 or 6 feet deep. In times of ordinary flood, and when Otter creek is running only bank-full, all of its water is discharged through its channel along the defendant's lands, but when the channel there is bank-full the stream overflows on the plaintiff's lands, because of the lower banks and slower current. In times of

very high water the creek overflows its banks through the McClurkin land, and the water, thus leaving the channel of the creek, spreads out over about a thousand acres of farming land east and northeast, and some of it eventually finds its way back into the stream, several miles below.    These overflows along the McClurkin land are occasional only, and, when they do occur, the water goes over the bank for a distance of about 1,200 feet in length, and sometimes to a depth of two or three feet.    It thereafter follows no well-defined channel, but spreads over cultivated fields in an east and northeasterly direction; none of it, however, ever reaching the plaintiffs' lands.    To prevent this overflow of their lands, the defendants began the construction of a levee substantially parallel with the east bank of Otter creek, and extending some distance along the same.    The plaintiffs thereafter commenced this suit to enjoin the construction of the levee, alleging that, if built, it would divert the flow of water to the channel of the creek, and that such diversion of the water would cause the flooding of the stream below and the overflow of their lands.

The legal question thus presented for determination is an interesting one, and it is not entirely free from doubt, either under our own decisions, or under the decisions of the courts generally.    It may be stated thus: May a riparian proprietor embank against the natural overflow from an inland stream, when the effect may be to cast an increased volume of water upon the land of other proprietors, to their injury?    Reason and justice should answer the question in the negative, and we believe that the weight of authority has so answered it. The rights of riparian proprietors on both navigable and unnavigable streams are to a great extent mutual or common, and it is a fundamental rule that the use of that which is common to all must be reasonable.    The riparian proprietor selects his location for the benefits which may come to him from the common use of the stream, and it is manifest that he should not be permitted to do any act relative thereto that

will result in substantial injury to another riparian owner, either above or below. Gould on Waters (3d Ed.) sections 160-204, and cases cited; 2 Cooley's Blackstone (3d Ed.) 121; *East Jersey Water Co. v. Bigelow,* 60 N. J. Law, 201 (38 Atl. 631); *Tillotson v. Smith,* 32 N. H. 90 (64 Am. Dec. 355); *Rex v. Trafford,* 1 B. & A. 874; Angell on Water Courses (7th Ed.) section 334; *O'Connell v. East Tenn. Ry. Co.,* 87 Ga. 246 (13 S. E. 489, 13 L. R. A. 394, 27 Am. St. Rep. 246); *Burwell v. Hobson,* 12 Grat. 322 (65 Am. Dec. 247); *Crawford v. Rambo,* 44 Ohio St. 279 (7 N. E. 429); *K. C., M. & B. R. Co. v. Smith,* 72 Miss. 677 (17 South. 78, 27 L. R. A. 762, 48 Am. St. Rep. 579). The general proposition stated above is not seriously controverted by the appellants, but they contend that the overflow from Otter creek onto the defendant's land is surface water, and that it may be repelled, in the interest of good husbandry. It may be doubtful whether the overflow onto the defendant's land is, strictly speaking, surface water, but it will probably have to be so treated, under former decisions. *Morris v. City of Council Bluffs,* 67 Iowa , 343. If it be so named and treated, how does it affect the respective rights of these litigants. By the civil law the lower land owed to the higher the servitude of receiving all of the water which naturally, without the hand of man, flowed down upon it; and in *Livingston v. McDonald,* 21 Iowa, 160, this court, speaking through Mr. Justice Dillon, adopted the rule of the civil law so far as it denied to the upper owner the right to collect the water in a body or precipitate it in greatly increased or unnatural quantities upon his neighbor to his substantial injury. This rule has been adhered to and many times cited in the decisions of this court, and is firmly established; the latest recognition thereof being in the case of *Brown v. Armstrong,* 127 Iowa, 175. Neither the owner of a dominant nor of a servient estate has the right to dam or to collect surface water and cast it upon his neighbor in an increased or unnatural way or quantity, to his injury. Iowa cases *supra* and *Sullens v. C., R. I.*

& P. Ry. Co., 74 Iowa, 659; Moore v. Ry. Co., 75 Iowa, 263;
Noe v. Ry. Co., 76 Iowa, 360; Houghtaling v. Ry. Co., 117
Iowa, 540.   This holding is, at least, a partial departure from
the rule of the common law, and entirely fails to recognize the
rule of good husbandry contended for by the appellants.    In
Wharton v. Stevens, 84 Iowa, 107, relied on by the appellants
to sustain their right to repel· surface water, the rule of the
Livingston Case was approved; but it was held that it was
not applicable to that case, because no increase of water was
thrown on the plaintiff's land; and such was also the express
finding in Vannest v. Fleming, 79 Iowa, 638.   It is con-
tended further, that Hoard v. City of Des Moines, 62 Iowa,
326, and Morris v. City of Council Bluffs, 67 Iowa, 343, are
authority for building the levee in question.   In both cases
the municipalities constructed embankments which repelled
so-called surface water and cast it upon the plaintiffs, to their
injury; and, if cities have no greater rights in the matter than
individuals, the cases would sustain the appellants' claim.
The statute gives such corporations the right to grade their
streets, and the adjoining land or lot owners the corresponding
right to bring their lots or lands to the established grade, and
for these reasons a different rule has been applied to cities.
Cedar Falls v. Hansen, 104 Iowa, 189; Furniture Co. v. City
of Davenport, 99 Iowa, 589; Sullens v. Ry Co., supra.

The appellants further contend that, even if the law is
found against them on the main proposition, the plaintiffs
have not proved that they will suffer damage by reason of
an increased flow of water down Otter creek, and base this
contention on the undisputed evidence that the lower land is
overflowed before the water overflows the banks through the
McClurkin land.   The trial court found against them on this
proposition.   It is undoubtedly true that a riparian owner
may repel the water and cause it to flow in the channel of·
the stream which it has left, if by doing so he inflicts no in-
jury on his neighbor.   If an injury to the lower land will
as certainly occur without the embankment, because of the

natural overflow, the party seeking an injunction must prove that the additional water cast upon his land will in fact damage him; and this, we think, has not been done, and the writ should have been refused. *Warner v. C. & N. W. Ry. Co.* 120 Iowa, 159; *Collins v. Keokuk,* 91 Iowa, 293; *Dorr v. Simerson,* 73 Iowa, 89; *Plagge v. Mensing,* 126 Iowa, 737. — *Reversed.*