(Feb. 3, 1913.)

BOISE DEVELOPMENT COMPANY, LTD., a Corporation, J. S. D. MANVILLE, E. L. LARSON and MATTHEW McCLAIN, Respondents, v. IDAHO TRUST & SAVINGS BANK, LTD., BOISE CITY, a Municipal Corporation of the State of Idaho, and C. R. SHAW, Appellants.

[133 Pac. 916.]

INJUNCTION—WATERS AND WATERCOURSES—RIPARIAN OWNER—BREAK-WATER OR DAM IN STREAM—INJURY.

(Syllabus by the court.)

1.   The general rule adopted by courts in granting an injunction *pendente lite* is more liberal than is applied upon the trial of the cause upon its merits.

2.   Where an application is made by a riparian owner for a permanent injunction, restraining a riparian owner upon the opposite side of the stream from constructing and maintaining a dam or breakwater, upon the ground that the construction of such dam or obstruction will cause the water to overflow the land of the riparian owner who applies for such injunction, the petitioner should be required to show reasonable grounds for apprehending an actual injury or a reasonable probability of injury, before the court adjudges a permanent injunction.

3.   Where application is made for a permanent injunction to restrain the construction and maintenance of a breakwater located upon the lands of a riparian owner, where no showing is made of any real or imminent danger or damage, and it is not shown to any degree of certainty that even a reasonable apprehension, prospect, possibility or contingency of any actual injury exists, an injunction cannot be granted to allay the fears and apprehension of a riparian owner of land upon the opposite side of the stream as to what may occur in the future. It is incumbent upon the petitioner to show that the acts against which he seeks protection are not only threatened, but will in all probability be committed to his injury. The injury must be material and actual, and not fanciful or theoretical, or merely possible.

4.   If the injury to a riparian owner on the opposite side of the stream from the place where the breakwater or dam is located will as certainly occur without the embankment, because of the natural overflow, the party seeking an injunction must prove that

the additional water cast upon the land will in all probability damage him.

5.   A riparian owner of land abutting upon a stream, whether navigable or non-navigable, has the legal right to place barriers, such as dams and breakwaters, for the protection of his lands, and to prevent the overflow or damage by the stream, but in so doing he cannot place such dam or breakwater in the channel or course of the stream as will change the course of the river or divert the course of the water, and will result in destroying or overflowing the lands of the owners abutting on said stream, either above or below.

6.   A riparian owner may repel the water flowing in a stream and cause it to flow in the channel of the stream which it has left during high water, if by so doing he inflicts no injury to the riparian owner upon the opposite side of the stream.

7.   *Held,* that the record in this case clearly shows the evidence and findings of the court are not sufficient to justify the issuing of a permanent injunction.

8.   *Held,* that the defendant in this case, the appellant here, is in no way relieved from any liability arising from injury which results to the respondents or any other riparian owners on the opposite side of the river from the appellant, if such injury is caused by the construction of the breakwater in question in this action. Neither does it mean that the appellants cannot be enjoined at any time from maintaining said breakwater when the circumstances show clearly that the construction of the breakwater will cause the water to back up or overflow, erode or injure the lands of the respondents, should such breakwater bring about such result in the future.

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. John F. MacLane, Judge.

Action for a permanent injunction restraining the construction and maintenance of a dam and breakwater in the Boise river.   *Reversed.*

Alfred A. Fraser, for Appellants.

P. E. Cavaney, for Appellant, Boise City.

Before a court of equity will grant relief, it is necessary for the complainant to satisfy the court that irreparable injury will occur if an injunction be not granted.   (22 Cyc. 762; *Schubach v. McDonald,* 179 Mo. 163, 101 Am. St. 452, 78 S. W. 1020, 65 L. R. A. 136; *Rouse v. Martin,* 75 Ala. 510, 51

Am. Rep. 463; *Berri v. Patch,* 12 Cal. 299; *Smith v. Schlink,* 15 Colo. App. 325, 62 Pac. 1044; *Kirwan v. Murphy,* 189 U. S. 35, 23 Sup. Ct. 599, 47 L. ed. 698.)

Where compensation in money would be adequate, the injury cannot be said to be irreparable. (*Carney v. Hadley,* 32 Fla. 344, 37 Am. St. 101, 14 So. 4, 22 L. R. A. 233; *Lloyd v. Catlin Coal Co.,* 210 Ill. 460, 71 N. E. 335; *Gause v. Perkins,* 56 N. C. 177, 69 Am. Dec. 728.)

In this case there was no evidence introduced which in any manner would tend to prove that the injuries which plaintiffs alleged might occur could not be compensated for in damages. There is no allegation or proof of the insolvency of the defendants. There was no proof introduced to the effect that the lands of the complainants were cultivated lands, or that crops ever were grown upon them; that they had any buildings thereon; that they were inhabited by any person whose home might be flooded, nor any other circumstance or fact which would tend to prove that the damages that might occur could not be compensated for in money. (*Blaine v. Brady,* 64 Md. 373, 1 Atl. 609.)

"It is undoubtedly true that a riparian owner may repel the water and cause it to flow in the channel of the stream which it has left if by doing so he inflicts no injury on his neighbor." (*Keck v. Venghause,* 127 Iowa, 529, 103 N. W. 773, 4 Ann. Cas. 716; *Whitehair v. Brown,* 80 Kan. 297, 102 Pac. 783, 18 Ann. Cas. 216.)

No evidence was introduced on behalf of the plaintiffs, proving or tending to prove that any of their rights had been invaded or any damage had been done to them. This being the case, a permanent injunction should not have been granted, but the complaint should have been dismissed without prejudice to a new action whenever the rights of the plaintiffs are invaded. (*Winsor v. Hanson,* 40 Wash. 423, 82 Pac. 710.)

A riparian proprietor may legally erect any work to prevent his lands from being overflowed by any change in the natural state of the river and to prevent the old course of the river channel from being altered. (*Barnes v. Marshall,*

68 Cal. 569, 10 Pac. 115; *Lamb v. Reclamation Dist.,* 73 Cal. 125, 14 Pac. 625; *Gulf etc. R. R. Co. v. Clark,* 101 Fed. 678, 41 C. C. A. 597.)

Smead, Elliott & Healy and Hawley, Puckett & Hawley, for Respondents.

The accustomed course of a stream is not to be found in historical research, but is that which is its natural and apparently permanent course at the time when the right is called into question.   (*Withers v. Purchase,* 60 L. T., N. S., 819.)

The narrowing of a stream by driving piles and filling out to them is the subject of injunction.   (*Hartshorn v. Chaddock,* 135 N. Y. 116, 31 N. E. 997, 17 L. R. A. 426.)

For a case directly in point, establishing the law of this jurisdiction, see *Fischer v. Davis,* 19 Ida. 493, 116 Pac. 412.

The danger of overflow, erosion and constantly recurring damages by flood is imminent.   (*Wilson v. Boise City,* 20 Ida. 133, 117 Pac. 115; *Morton v. Oregon Short L. R. Co.,* 48 Or. 444, 120 Am. St. 827, 87 Pac. 151, 1046, 7 L. R. A., N. S., 344; *Oliver v. Klamath Lake Nav. Co.,* 54 Or. 95, 102 Pac. 786.)

It is well established that respondents will be damaged at every high-water season.   This is sufficient to invoke remedy by injunction, to prevent multiplicity of actions.   (*Corning v. Troy etc. Factory,* 40 N. Y. 192; *Petrolia Mfg. Co. v. Jenkins,* 29 App. Div. 403, 51 N. Y. Supp. 1028; *Ulbricht v. Eufaula Water Co.,* 86 Ala. 587, 11 Am. St. 72, 6 So. 78; *Haines v. Hall,* 17 Or. 165, 20 Pac. 831, 3 L. R. A. 609.)

When it comes to building dams or other embankments or structures into the bed of the stream, so as to interfere with the flow of the stream, the party who does so acts at his peril. A court of equity should never permit such a thing to be done, where there is a showing that it will in all reasonable probability result in "great or irreparable" injury to someone else.   (*Bitterman v. Louisville etc. R. Co.,* 207 U. S. 205, 28 Sup. Ct. 91, 52 L. ed. 171–184; *Trade Dollar etc. v. Fraser,* 148 Fed. 585, 79 C. C. A. 37; 2 Farnham, Water Rights, p. 1635; *Hargraves v. Kimberly,* 26 W. Va. 787, 53 Am. Rep. 121:

*Paddock v. Somes*, 102 Mo. 226, 14 S. W. 746, 10 L. R. A. 254.)

The rule is that a riparian proprietor cannot erect a structure which would disturb the course of a stream, *without the consent of the opposite proprietor,* although no material injury is inflicted on the opposite proprietor. (2 Farnham, Waters and Watercourses, p. 1723; *Gerrish v. Clough,* 48 N. H. 9, 97 Am. Dec. 561, 2 Am. Rep. 165.)

Damages are never adequate to compensate injury to realty or appurtenant rights, for the reason that the property cannot be restored to *statu quo,* nor can it be replaced by money. In such case the wrong will be prevented or stopped by injunction. (Pomeroy, Eq. Jur., sec. 1357; *Blaine v. Brady,* 64 Md. 373, 1 Atl. 609.)

The injury threatened need not be great to entitle the injured party to injunctive relief. (*Newell v. Sass,* 142 Ill. 104, 31 N. E. 176; *Edwards v. Haeger,* 180 Ill. 99, 54 N. E. 176; *Wahle v. Reinbach,* 76 Ill. 322.)

If repeated acts of trespass are done or threatened, although each of the acts, taken by itself, may not be destructive or involve irreparable injury, and the legal remedy may, therefore, be adequate for each single act if it stood alone, the entire wrong may be prevented or stopped by injunction. (Beach, Mod. Eq. Jur., sec. 721.)

The doctrine of injunction to prevent multiplicity of actions is applied in all sorts of instances. (*Nashville etc. Ry. Co. v. McConnell,* 82 Fed. 65.)

Equity acts in such cases because damages would be inadequate to vindicate the *right* of a riparian owner. (*Scheetz's Appeal,* 35 Pa. 88.)

Injury in such cases is irreparable because damages are not capable of ready computation and ascertainment. (*Woodall v. Cartersville etc. Co.,* 104 Ga. 156, 30 S. E. 665; *Roberts v. Vest,* 126 Ala. 355, 28 So. 412.)

STEWART, J.—This action was instituted in the district court of Ada county by plaintiffs, respondents here, against the defendants, to secure a permanent injunction restraining

the defendants from completing a certain dam constructed by defendants in Boise river, and from filling in a portion of the river channel behind said dam, and from maintaining the same when completed, and compelling the defendants to remove the portion so constructed, and all obstructions made by defendants in the channel of the Boise river.

The cause was tried to the court and findings of fact and conclusions of law were made by the trial court, and judgment rendered in favor of the plaintiffs, perpetually enjoining and restraining the defendants from the completion of that certain dam or breakwater now erected in the channel of the Boise river.   This appeal is from the judgment.

The complaint alleges the facts as follows: That the Boise Development Company is a corporation; that the Idaho Trust & Savings Bank is a corporation; that Boise City is a municipal corporation; that the Boise Development Company is the owner of a valuable interest in a certain tract of land commonly known as Ridenbaugh Island, and more particularly described as Boise City Park Subdivision, and is in possession of said property and all riparian rights appurtenant to said tract, and is the owner of such riparian rights; that such land forms a part of the south bank of the Boise river; that the defendant, Idaho Trust & Savings Bank, has platted a certain tract of land described as Riverside Park Addition to Boise City, Idaho, and recorded the same, and that said tract of land lies along the westerly line of Ninth street, in said Boise City, and along the north bank of said Boise river; that a portion of the tract so platted, about three acres thereof, lies in the channel of the Boise river, and forms a part of the banks and bed thereof, opposite and across the river from the lands of plaintiff; that the plat of the tract was submitted to the mayor and common council of Boise City by the Idaho Trust & Savings Bank, and was by the city accepted; that the streets and alleys shown on the plat are dedicated and donated to the public by deed of donation duly executed and indorsed, and that the extreme southern edge of said tract so platted forms a street referred to upon the plat as Park Boulevard, which street and the whole

thereof lies in the channel and forms a part of the bed of the Boise river; that the Idaho Trust & Savings Bank is erecting a dam or breakwater out into the channel of the Boise river along the southerly line of said addition as platted, which dam extends from a point on the north bank of said Boise river about 150 feet below the Ninth street bridge, in said Boise city, approximately 1,200 feet in a westerly direction to another point on the north bank of the Boise river, which dam or breakwater extends out into the channel of the Boise river about 240 feet, cutting off and obstructing a large portion of the natural channel of the river and changing the natural course thereof; that on account of said changing of the natural course of the river and the obstructing of the natural channel thereof, the whole of the waters of said stream will be compelled to flow along the south bank of the river and on, to, and against the lands of the plaintiffs, and are causing, and will cause, said lands to be overflowed, eroded and washed away; that the breakwater is being so constructed with the intent, object and purpose of causing the waters to flow on, to and against the lands of the plaintiffs, and that the plaintiffs have protested against the erection and maintenance of the dam and breakwater; that the Idaho Trust & Savings Bank proposes to complete the construction of said breakwater and maintain the same, and it is the purpose of the trust company to fill in, behind the dam, the bed of the river to a level with the adjoining lands on the bank of the river, to the great and irreparable injury of plaintiffs, and each of them; that the plaintiffs have no plain, speedy and adequate remedy at law whereby to redress and prevent such injury and damage, nor any remedy whatsoever; that the dam and breakwater form a portion of the street platted as Park Boulevard, and that the title to the breakwater is in Boise City, and that the mayor and common council propose to maintain the same in its present condition and to accept and maintain the same as a part of said boulevard when completed, to the great and irreparable injury and damage of the plaintiffs, and each of them; that the dam and breakwater extends across the thread of the stream

of the Boise river on, to and upon the lands of the company to its irreparable injury and damage, and is an obstruction to the free use by the plaintiffs of the lands and property of the plaintiffs and the riparian rights and possessions of the plaintiffs; that the maintenance of the dam or break-water and the filling in of the channel of the river will result in continuous and constantly recurring damage and injury to the plaintiffs; that the completion and maintenance of the dam and the filling in of the channel will cause such frequent, continuous and constantly recurring damage to plaintiffs, and to each of them, as to result in a multiplicity of suits to redress and prevent such damage and injury, unless restrained so to do.

A separate answer was filed by Boise City to this complaint and in the answer the city puts in issue the allegations of the complaint, and admits that Boise City entered into an agreement with the Idaho Trust & Savings Bank, as alleged in the complaint, and that such agreement was still in full force and effect.

The answer of the Idaho Trust & Savings Bank puts in issue all the material allegations of the complaint.

The court in its findings found: 4. That the Boise Development Company is the owner of a certain tract of land known as Ridenbaugh Island, more particularly described as Boise City Park Subdivision. 6. That the Idaho Trust & Savings Bank platted a certain tract of land described as Riverside Park Addition to Boise; that said tract lies along the westerly line of Ninth street in Boise, and along the north bank of the Boise river; that a portion of said tract so platted, about three acres, lies in the ordinary high-water channel of the Boise river, and forms a part of the banks and bed thereof, directly opposite to and across the river from the lands of plaintiffs, and each of them. 8. That the Idaho Trust & Savings Bank was maintaining a dam and break-water which it had erected prior to the time of filing the complaint, out in the channel of the Boise river along the southerly line of said addition as platted, which dam extends from a point on the north bank of the Boise river about 150

feet below the Ninth street bridge, in said Boise City, approximately 1,200 feet in a westerly direction to another point on the north bank of the Boise river, which dam or breakwater extends at one point out into the channel of the Boise river about 240 feet, cutting off and obstructing a large portion of the natural channel of said river during high-water season of each year, and changing the natural channel thereof to that extent.    9. That the dam or breakwater extends out into the main high-water channel of the river about one-half the distance across the same, and by reason thereof the width of the stream at its narrowest part opposite the lands of the plaintiff is about 132 feet; that the tendency of the river in the past years has been toward the north bank thereof, being the bank upon which the defendant's property abuts, and has eroded and cut away said north bank to a considerable extent; that the current of the river will strike the retaining wall or breakwater at an angle of approximately 30 degrees, and that it will be deflected therefrom at the same angle toward the lands of the plaintiffs, and that the effect of this deflection is problematical and not ascertainable with certainty prior to the actual observation thereof, as, owing to the gravelly nature of the soil and the geological formation of the country through which the river runs, it is impossible to determine in advance of such actual observation whether the river will cut a new channel, will deepen the present channel or will tend to widen that channel by the erosion of the plaintiffs' property; that there is a reasonable probability that the river will overflow or erode the plaintiffs' property to an unascertained and at present unascertainable extent; that the construction and maintenance of said breakwater threatens plaintiffs' property with irreparable injury but it cannot be foretold with certainty that such injury will actually and necessarily result, in view of the possibility of the deepening of the channel.    11. That the maintenance of the breakwater and the filling in of the channel of the river as proposed by the defendant will, it is reasonably probable, result in continuous and constantly recurring damages to the plaintiffs, unless the completion and

maintenance thereof is abated and enjoined, and a multiplicity of suits to redress and prevent such damage and injury may, in reasonable probability result, unless the breakwater is abated and maintenance thereof enjoined.

From these facts the trial court found, as a conclusion of law, that the defendants should be restrained and enjoined from the maintenance and completion of the dam and breakwater, and restrained and enjoined from filling in a part of the bed of the Boise river, and should be commanded to remove the breakwater in said Boise river, or so much of it as is necessary to permit the waters of the river to flow over and along the channel of the river to the same extent as prior to the erection of the breakwater, and to such an extent that the same shall not injure or damage the property of the plaintiffs; that a permanent injunction issue restraining the defendants from further erection and maintenance of the breakwater.

In the brief of counsel for appellant there are eight assignments of error. In these respective assignments the error is assigned against each finding of the court upon the material issues, and in the argument of counsel these various assignments of error are combined in two contentions, and the entire argument is in reference to these two questions:

First, that the evidence fails to establish the finding of the trial court that the maintenance of the dam or breakwater will cause the plaintiffs great or irreparable damage, or any damage whatever. Second, that the evidence establishes the fact that if any damage should occur by reason of the maintenance or completion of this dam or breakwater, the plaintiffs have a plain, speedy and adequate remedy at law in damages therefor.

These two questions will be considered together, and we shall first consider whether counsel for appellant is correct in contending that the findings of the court do not show that the plaintiffs will suffer great and irreparable damage by reason of the construction, maintenance and completion of this breakwater. In connection with this contention our at-

tention is directed to Findings Nos. 9 and 11, which are in the following language:

Finding No. 9: "That said dam or breakwater extends out into the main high-water channel of the river about one-half the distance across the same; that by reason thereof the width of the stream at its narrowest part opposite the lands of the plaintiff is about one hundred thirty-two (132) feet; that the tendency of the river in past years has been toward the north bank thereof, being the bank upon which the defendants' property abuts, and has eroded and cut away said north bank to a considerable extent; that the current of the river will strike the retaining wall or breakwater at an angle of approximately thirty (30) degrees, and that it will be deflected therefrom at the same angle toward the lands of the plaintiffs; that the effect of the deflection is problematical and not ascertainable with certainty prior to actual observation thereof, as owing to the gravelly nature of the soil and the geological formation of the country through which the river runs, it is impossible to determine in advance of such actual observation whether the river will cut a new channel, will deepen the present channel, or will tend to widen that channel by the erosion of the plaintiffs' property; that there is a reasonable probability that the river will overflow or erode the plaintiffs' property to an unascertained and at present unascertainable extent; that the construction and maintenance of said breakwater threatens the plaintiffs' property with irreparable injury, but it cannot be foretold with certainty that such injury will actually and necessarily result in view of the possibility of the deepening of the channel."

Finding No. 11: "That said breakwater is an obstruction of the free passage, in the customary manner, of a navigable river, and as such is a nuisance. That the maintenance of said breakwater and the filling in of the channel of the river as proposed by the defendant will, it is reasonably probable, result in continuous and constantly recurring damages to the plaintiffs, unless the completion and maintenance thereof is abated and enjoined, and a multiplicity of suits, to redress

and prevent such damage and injury may, in reasonable probability, result unless the said breakwater is abated and maintenance thereof enjoined.''

It is argued that the findings are not sufficient as a basis for decreeing a permanent injunction.

Before considering the foregoing findings of the trial court, it is proper to call attention to the allegations of the complaint with reference to the injury alleged to have been suffered by the plaintiffs at the time the action was commenced, and the probable injury to be sustained if the obstruction is continued. We find no allegation in the complaint, and the trial court does not find that the plaintiffs had, at the time the action was commenced, sustained any damages from the construction of the dam or breakwater by the defendant. The sole object and purpose of the suit is to secure a perpetual injunction against the maintenance of said dam in the future, and because of threatened future injury to plaintiffs' lands. The anticipated and threatened injury is such as may result to plaintiffs because of changing the natural course of the river and the obstruction of the natural channel of the river so as to cause the lands of the plaintiffs to be overflowed, eroded and washed away, and it is alleged that such dam or breakwater is being so constructed with the intent and object of causing the waters to flow on, to and against the said lands of plaintiffs, and for the purpose of filling in behind the dam so as to cause great and irreparable injury to plaintiffs, and each of them.

Sec. 4288, Rev. Codes, provides that an injunction may be granted in the following cases: ''1. When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually. . . . . 3. When it appears during the litigation that the defendant is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights, respecting the

subject of the action, and tending to render the judgment ineffectual.''

This court, in the case of *Gilpin v. Sierra Nevada Con. Min. Co.*, 2 Ida. 662, 23 Pac. 547, 1014, 17 Morr. Min. Rep. 310, considered the foregoing statute and says: ''The statute seems to be framed to meet the case of such an injury as here complained of. The subject matter of the litigation is a mine, which is valuable only for the mineral it contains. To remove that mineral is certainly waste, and waste is one ground for the issuance of this writ. It is also great injury; and that is another ground, whether it be reparable or not. Irreparable injury is still another ground, disjoined in the statute from the other grounds.'' In that case the court also held that where a party alleges that acts are being committed and threatened to be continued in violation of his rights, which will cause waste, great or irreparable injury, he is entitled to a writ restraining the commission of such acts, particularly where the subject matter of the litigation is a mine, and the act complained of is the removal of the ore therefrom, which renders the mine worthless. In that case, of course, the facts showed that the court disposed of the question and arrived at the conclusion ''that, on the whole, upon this point, it may well be questioned whether the plaintiff has not fully shown that the injury, if consummated, will be irreparable. But whether it be fully shown or not, the other statutory grounds, as we have seen, are sufficient to authorize him to claim an injunction.'' In that case, however, there can be no question but that the allegations and evidence show clearly that the purpose of the parties was to take ore out of a mine. Of course, the taking of ore out of the mine would be a great waste of property of the mine owner, and an irreparable injury, and entitle the owner to an injunction, and the rule would apply.

In the case of *Staples v. Rossi*, 7 Ida. 618, 65 Pac. 67, this court was dealing with the question of the removing of timber by trespassers who had cut the same upon land claimed by another party, suit being brought to establish the plaintiff's

title, and in that case the court said: "Injunction will issue to restrain, temporarily, an act which will result in great damage to the plaintiff, although the injury is not irreparable, and notwithstanding that other remedies lie in behalf of plaintiff."

This same doctrine is announced by this court in *Price v. Grice,* 10 Ida. 443, 79 Pac. 387.

The foregoing cases relate to the granting of an injunction *pendente lite,* and the rule adopted by courts in granting an injunction *pendente lite* is more liberal than is applied upon the trial of the cause upon its merits. As heretofore stated, there is no allegation in the complaint and no finding of the trial judge that there has been any injury to plaintiffs' land.

In the case of *Lorenz v. Waldron,* 96 Cal. 243, 31 Pac. 54, the supreme court of California in discussing this question says: "Even the possibility of such injury is negatived by a considerable preponderance of the whole evidence. But the mere possibility, or anything short of a reasonable probability, of injury is insufficient to warrant an injunction against any proposed use of property by its owner. 'Injury, material and actual, and not fanciful or theoretical, or merely possible, must be shown as the necessary or probable result of the action sought to be restrained.' (*Genet v. President etc. D. & H. C. Co.,* 122 N. Y. 505, 25 N. E. 922.)"

The Lorenz case cites with approval *Lutheran Church v. Maschop,* 10 N. J. Eq. 57; *Sherman v. Clark,* 4 Nev. 138, 97 Am. Dec. 516; High on Injunctions, sec. 790, and a number of cases sustaining the holding in the Lorenz case.

In *Sherman v. Clark, supra,* the supreme court of Nevada held: "It must also be made to appear that there is at least a reasonable possibility that a real injury will occur if the injunction be not granted."

In the case of *Winsor v. Hanson,* 40 Wash. 423, 82 Pac. 710, the supreme court of Washington had under consideration a similar question, and in that decision quoted from 21 Eng. & Am. Ency. of Law as follows: "Or when the injury apprehended is doubtful, contingent, or eventual, merely."

Commenting upon this rule the court said: "The apprehended damage is problematic, to say the least. The results which may ultimately flow from the obstruction of the stream cannot, in the nature of things, be determined or adjudicated at this time. The respondent, however, has no right to place obstructions in the stream which will cause the water to back up and overflow the land of the appellant to his injury, and should the obstruction which he proposes to place in the stream bring about such a result in the future, the appellant will have a right of action therefor, which should not be cut off on the record before us."

In the case of *Lester Real Estate Co. v. City of St. Louis,* 169 Mo. 227, 69 S. W. 300, the supreme court of Missouri had under consideration the question now involved, and said: "Hence, neither in fact nor in theory has the plaintiff's property been damaged by anything that has been done or can be done under any ordinance now in existence; and without the authority of an ordinance nothing can be done. No real or imminent danger or damage is shown, and there is not even a reasonable apprehension, prospect, possibility, or contingency of any such shown to exist. In 16 Am. & Eng. Ency. of Law, 2d ed., p. 361, the rule is thus stated: 'The court cannot grant an injunction to allay the fears and apprehensions of individuals. They must show the court that the acts against which they ask protection are not only threatened, but will in all probability be committed, to their injury. An injunction should not be issued to prevent the doing of an act unless the petitioner shows reasonable grounds for apprehending that it will otherwise be done. If, however, it is shown that the defendants threaten to do the wrong, and that they have the power, the court will issue the writ.' The same rule is substantially laid down in Bisp. Eq., 3d ed., p. 492, where it is said: 'A mere threat, or an act which may upon some contingency or at some remote time prove a nuisance, will not warrant the interference of the court. And the injury must not be contingent merely; an apprehension on the part of the complainant of a possible or speculative

. harm will not be enough.'   See, also, 1 Beach, Inj., sec. 17; 2 Beach, Inj., sec. 1301; 1 High, Inj., 3d ed., p. 886; Story on Equity Jurisprudence, vol. 2, 13th ed., p. 226, sec. 924a.''

The authorities bearing upon this question are found collated and cited in 16 Am. & Eng. Ency. of Law, 2d ed., p. 361, and also in vol. 22 Cyc., p. 758.

In the case of *Fischer v. Davis,* 19 Ida. 493, 116 Pac. 412, this court had under consideration a similar question to the one involved in this case, and after reviewing a number of cases said: ''We believe the rule to be that riparian owners of land abutting upon a stream, whether navigable or non-navigable, have the right to place such barriers as will prevent their lands from being overflowed or damaged by the stream, and for the purpose of keeping the same within its natural channel.   But we are of the opinion that a riparian owner of lands abutting upon a stream has no right to place obstructions out into the stream for the purpose of changing the natural course of the river, or for any other purpose that would do damage to a riparian owner on the opposite side or to owners of land abutting upon said stream either above or below.''

This rule is discussed in the case of *Gulf, C. & S. F. Co. v. Clark,* 101 Fed. 678, 41 C. C. A. 597, and it is held: ''A riparian owner upon a stream may construct necessary embankments, dikes, or other structures to maintain his bank of the stream in its original place and condition, or to restore it to that condition, and to bring the stream back to its natural course, when it has encroached upon his land; and, if he does no more, other riparian owners cannot recover damages for the injury his action causes them.''

This doctrine is also discussed and clearly announced in the case of *Barnes v. Marshall,* 68 Cal. 569, 10 Pac. 115: ''The defendant had a right to protect his land from the threatened change of the river's channel by building a bulkhead as high as was his original bank before it washed off.   He thereby took no right from the plaintiff—he simply attempted to maintain his own.   Angell, Watercourses, sec. 333.   'A riparian

proprietor may in fact legally erect any work to prevent his lands from being overflowed by any change in the natural state of the river, and to prevent the old course of the river from being altered.' "

The supreme court of California, in the case of *Lamb v. Reclamation District No. 108*, 73 Cal. 125, 2 Am. St. 775, 14 Pac. 625, where a general discussion is indulged in by the court of the question now under consideration, cited and approved *Shelbyville & Brandywine Turnpike Co. v. Green*, 99 Ind. 205, wherein it was held: "That plaintiff could protect his land from overflow of the Big Blue river by erecting a levee on its bank at a place where there was 'a depression washed out across the lands of plaintiff,' and where 'when there was a rise in said river, the water passed out over said lands of plaintiff,' although it caused a great overflow on the premises of defendant, to its damage."

It seems to be a general rule that a riparian owner may repel the water flowing in a stream and cause it to flow in the channel of the stream which it has left during high water, if by so doing he inflicts no injury to the riparian owner upon the opposite side of the stream. If an injury to a riparian owner on the opposite side of the stream from the place where the breakwater or dam is located will as certainly occur without the embankment, because of the natural overflow, the party seeking an injunction must prove that the additional water cast upon the land will in fact damage him, and this, we think, has not been done in this case. (*Keck v. Venghause*, 127 Iowa, 529, 103 N. W. 773, 4 Ann. Cas. 716; *Collins v. Keokuk*, 91 Iowa, 293, 59 N. W. 200; *Dorr v. Simerson*, 73 Iowa, 89, 34 N. W. 752; *Plagge v. Mensing*, 126 Iowa, 737, 103 N. W. 152.)

The supreme court of Kansas, in *Whitehair v. Brown*, 80 Kan. 297, 102 Pac. 783, 18 Ann. Cas. 216, held: "A showing made by a land owner that it has recently occasioned the temporary flooding of his property to a greater extent [this refers to the maintenance of a dam] than ever before does not necessarily entitle him to an injunction against it. He must also show reasonable grounds for fearing the recurrence

of the conditions occasioning his new injury with such frequency as seriously to affect the value of his land, or other considerations rendering his remedy at law inadequate.''

The rule announced in the cases above cited is a general one and applies to the pleadings and facts in this case, that a riparian owner of land abutting upon a stream, whether navigable or non-navigable, has the legal right to place barriers, such as dams and breakwaters, for the protection of his lands and to prevent an overflow or damage by the stream, but in so doing he cannot place such dam or breakwater in the channel or course of the stream as will change the course of the river or divert the course of the water, and will result in destroying or overflowing the lands of a riparian owner on the opposite side of the river, or the lands of owners abutting on said stream, either above or below.

Turning now to the record in this case, we find that upon the beginning of the trial of said cause the respective parties to the suit stipulated certain facts as follows: That in the year 1876 the main channel of Boise river ran near South Boise along the south side of what is known as Ridenbaugh Island, and approximately one-half mile south of the breakwater in controversy, and a slough ran from the Boise river approximately along the present south bank of the river from the head or easterly end of what is known as Ridenbaugh Island, and adjoining the main channel of the Boise river at a point about one-half mile westerly from the present Ninth street bridge. In 1878 the river suddenly changed its course, and from that time until the present date the main channel of the river has been along the lines of the former slough. The north bank of the main channel began to gradually change, owing to the action of the current of the river which flowed directly against it, and for a number of years the north bank of the river gradually receded and was washed away; that twenty years ago the county commissioners of Ada county, in order to stop the inroads of the river current upon the north bank of the river, caused a large amount of rip-rapping, consisting of placing lava rock, stone and boulders in walls and layers along the north bank of the Boise

river; that at various times the current of the Boise river has washed away and inroaded the north bank. The farthest north that said bank has been extended is along the lines shown upon plaintiffs' Exhibits "A" and "B," which are marked "a" on said exhibits; the present bank of Boise river, as shown on said plats, is marked as line "b," and has so existed as the north bank of the river about twenty years; that at various times since that date detritus and debris have been carried to the space between the present bank and the bank farther north which existed prior to the formation of the present north bank, and the space between the two banks has been filled to the present level; that lines "a" and "b" as above indicated are the ordinary high-water banks upon the north side of the river; that the object of the defendants in constructing the breakwater is to maintain the north bank of the Boise river along the line of said breakwater, and to fill the place between the breakwater and the present north bank and cause the same to be permanently improved and utilized for streets, sidewalks and town lots and similar purposes.

It is also apparent from the evidence that the trust company and Boise City are the owners, under a certain contract, of the lands which are to be protected by the construction of such breakwater upon the north bank of Boise river, beginning at a point about 150 feet below the Ninth street bridge, in said Boise City, and extending approximately 1,200 feet in a westerly direction to another point on the north bank of the river, which dam or breakwater extends out into the channel of the Boise river about 240 feet, cutting off and obstructing a large portion of the natural channel of said river during the high-water season of each year. The evidence also shows that this breakwater has been constructed below high water and above low water upon the lands of the plaintiffs, and that it is the purpose of the trust company to utilize such lands and improve them, and such lands have been platted and described as Riverside Park Addition to Boise City.

The above photograph, plaintiffs' Exhibit "A," taken from
the foot of the Ninth street bridge at the north end of said

bridge, looking westward, shows the Boise river and the dam or breakwater and the lands of the defendants to the right of the breakwater, and the lands of the plaintiffs to the left of the river. This picture also shows a part of the abutment or breakwater constructed by the county in building the bridge on Ninth street, which abutment extends down to the point where the breakwater in controversy commences. The north bank of the river during high water is also shown to the right of the breakwater, and also the low-water mark of the river below the breakwater. The record discloses that the intention of the appellants is to fill in behind this breakwater and utilize the land between the breakwater and the high-water bank, as indicated in the photograph, and the city will acquire, by reason of the platting of said ground, a right of way along the upper side of the breakwater; the respondents have included the lands owned by them across the river from the breakwater in a plat as a subdivision of Boise City, under the name of Boise City Park Subdivision. If this method is pursued by the respective parties, with proper limitations, there can be no question but that the waters of Boise river can be controlled within proper limits, and by so doing the value of the lands on both sides of the river, owned by the respective parties to this suit, will be greatly increased, and the ultimate objects and purposes of the respective parties will be accomplished.

The evidence of A. R. Smith, the president of the respondent company, is that he has watched the Boise river for about eighteen months prior to the trial of this case in the district court, and the construction of the dam and breakwater now involved; that he saw the construction of the dam; that it was begun in July, and that during the period from the time the constructive work was commenced up to the trial, the construction of the breakwater did not in any way force the waters in the river over on to the respondents' land or in any way injure them, and that the water flowing in said stream did not during that time overflow or erode or wash away the property or lands of the respondents. There is no conflict in the evidence that up to the time of the trial of the

cause in the district court the respondents had in no way been damaged by the construction of said breakwater. The evidence all relates to a possibility in the future, and the trial court in Finding No. 9 finds that the effect of the deflection is problematical and not ascertainable with certainty prior to actual observation, as owing to the gravelly nature of the soil and the geological formation of the country through which the river runs, it is impossible to determine in advance of such actual observation whether the river will cut a new channel, will deepen the present channel, or will tend to widen that channel by the erosion of the plaintiffs' property; that there is a reasonable probability that the river will overflow or erode the plaintiffs' property to an unascertained and at present unascertainable extent; that the construction and maintenance of said breakwater threatens plaintiffs' property with irreparable injury, but that it cannot be told with certainty that such injury will actually and necessarily result in view of the possibility of the deepening of the channel.

It is shown by the testimony of several witnesses who have been familiar with the Boise river for many years prior to the construction of the breakwater that the general tendency of the river has shifted gradually northward, and that the south bank has also been added to and gradually shifted to the north, and this has especially been true since the construction of the Ninth street bridge. This is because the water coming through under the bridge comes under said bridge at an angle of about 30 degrees, and has cut into the north bank and washed a kind of slough or channel about 30 feet below the bridge; that this has occurred from extreme high water, and this has caused accretions to the south side or north side of Ridenbaugh Island, now the lands of the respondent on the south side of the river. Since the construction of the breakwater the current has been along the breakwater, and after striking the breakwater it is shown by the evidence that the general course is parallel with the breakwater; it is not diverted across the river from the breakwater; and the only injury to the lands on the south side of the river would arise by reason of the rise in the elevation of the water along the

line of the breakwater, and the main and natural channel of the stream would be at a different point.

So, the contingency of an injury depends upon whether the current of the stream and the velocity of the water will take care of itself by its own volume in the course diverted. This, no doubt, is one of the reasons why it cannot be ascertained whether there ever will be any injury, and was the basis of the court's finding. This is very clearly demonstrated by the witness Carter, who seems to be a witness of some experience. This witness says: ''If the greater volume and the currents in there are practically parallel to that breakwater, the thalweg, or flow of the river, would be nearer the breakwater than it is on the convex side. And if a greater volume of water is thrown into any stream it is carried off in two ways; with greater velocity or greater cross-section, and in a stream like the Boise river that greater cross-section would be obtained by erosion where the maximum current velocities are found, which would be in the channel-way of the river. So the effect of building that breakwater would be, if a larger volume of water than is now passing through should pass down through the river and it should be confined or that section is insufficient to carry it, the section will enlarge itself so that it will carry it; and if a greater volume of water passes there than can be carried at the velocities depending upon the slope of the river, then of course the river would spread over whatever lands were lower next to it. But there would be practically no erosion in that case; the erosion would be confined to the river bed and spread; the water would go over any place where the water can reach which is lower than the water surface, or lower than the banks where it is confined.''

The reasoning and theory of this witness seems to the court to be sound and well founded, although other witnesses who testified gave opinions which in effect contradict the above theory. This same witness testified, in answer to the following question by the court: ''The channel being wider prior to the construction of the retaining wall, is there any way in which it can be determined with any degree of

definiteness which one of those three methods the river would actually adopt to carry off this water? A. Not without knowing the character of the river bottom; if that were known it could be determined. The Court: It is quite largely problematical in every river which one of these measures it will adopt to carry it off? A. Yes, sir; it will always deepen the river rather than widen if the material is such that it can be transported readily, assuming that the water flows as it does against this breakwater here.''

There is other evidence supporting the theory of the statement of the witness Carter. Many other witnesses were introduced who were also experts, who did not wholly agree with Carter, but the contradictions are not of such a character as to question the correctness of the judgment of this witness.

There is no showing made of any real or imminent danger or damage, and it is not shown to any degree of certainty that even a reasonable apprehension, prospect, possibility or contingency of any actual injury exists. An injunction cannot be granted to allay the fears and apprehensions the respondents have as to what may occur in the future. It was incumbent upon respondents to show that the acts against which they asked protection are not only threatened, but will, in all probability, be committed to their injury. The injury must be material and actual, and not fanciful, theoretical or merely possible. From the finding of the trial court it is apparent that the injury apprehended is doubtful, contingent or eventual and problematical, and that the court was unable to determine that any damage would result from the construction of the breakwater resulting from the flow from the obstruction of the stream, and the trial court did not make a finding at all that actual damage would result. We think that the proof in this case, when taken as a whole, supports this doubtful and uncertain finding of the trial court.

There is no question in this case, in our opinion, but that in determining the respective rights of the parties in this suit, an equal duty rests upon both as to their rights and duties with reference to the control of the waters running down Boise river, so that the channel of the stream is left

free and open to a sufficient capacity to carry the water, and that each of the parties to this action has a right to construct breakwaters so as to control the water and keep it within reasonable boundaries. As shown by the stipulation, the Boise river from the south to the north bank for many years was about a quarter of a mile wide, but the current of the water changed and the river has been narrower and taken a different course, and the banks of the regular and natural flow of the stream have been drawn in; and there is valuable land on each side, which by proper construction of dams and breakwaters can be used to great value by both riparian owners.

From a general review of the evidence in this case we do not believe that it is sufficient to justify the issuing of a permanent injunction. This does not mean, however, that the appellants are relieved or can be relieved from a liability arising from injury which results to the riparian owners on the opposite side of the river, if such injury is caused by the construction of the breakwater in question. Neither does it mean that the appellants cannot be enjoined at any time from maintaining said breakwater when the circumstances show clearly that the construction of the breakwater will cause the water to back up and overflow or erode or injure the land of the respondents; and should such breakwater bring about such a result in the future, the appellant will have a right of action which should not be cut off on the record before us. For these reasons the judgment in this case is *reversed.* Costs awarded to appellant.

Ailshie, C. J., and Sullivan, J., concur.

### ON REHEARING.

#### (June 26, 1913.)

STEWART, J.—We granted the application for a rehearing in this case, not because of any doubt as to the correctness of the opinion previously announced, either upon the

June, 1913.] Boise Development Co. v. Idaho etc. Bank. 61

Opinion of the Court—Stewart, J., on Rehearing.

facts or the law, but because of our desire to prevent any misconception concerning the position of the court and the effect of the judgment.

The facts stated in the original opinion and the rules of law therein announced have been cited in the recent case decided by this court, the case of *Fischer v. Davis, post,* p. 216, 133 Pac. 910, and in the latter case this court has followed the same general principles of law as were applied to the facts in this case.

The oral argument upon the rehearing was practically the same argument that was presented at the first hearing. After the argument the court found that the evidence and the maps were indefinite and insufficient to furnish the court the necessary data and measurements upon which to enter a proper decree, in accord with the opinion of the court after such consideration. The court notified counsel for the respective parties and consulted with such attorneys as to the court's selecting an engineer to ascertain the facts desired, which the engineer should furnish to the court, to which counsel on both sides consented. The engineer was appointed, and surveys and measurements made by the engineer have been designated upon the ground by proper stakes and marks, and also upon the map, Exhibit "A," and upon such evidence of the engineer and the evidence heretofore taken, this court now orders the following judgment:

The judgment of the trial court is modified, in that the appellants are enjoined and restrained from the completion of the dam or breakwater now erected along the Boise river extending from the eastern end of said breakwater and designated by the letter "G" placed upon Exhibit "A" by Scharf, the engineer appointed by this court, and hereafter described, and extending westerly to a stake at the west end of the dotted line upon Exhibit "A," designated by letter "F" upon Exhibit "A," as follows:

Commencing at an iron pin in the concrete pavement in the center of Eighth street and on the north line of Julia Davis Park, said pin being S. 34° 54′ W., a distance of 423.4 feet from an iron pin in the concrete pavement at the inter-

section of the center lines of Eighth and Battery streets, in Boise City; thence S. 85° 07' W., a distance of 135.6 feet to an intersection with the west face of stone retaining wall at "G," and the place of beginning of proposed wall; thence on a curve to the left with radius of 32.75 feet and tangent to the stone retaining wall at "G," the course of said wall being N. 8° 43' W., through a central angle of 55° 08', a distance on the curve of 31.6 feet to a point; thence N. 63° 51' W. a distance of 5.1 feet to a stake "C" set 20 feet northerly at right angles from the Boise river face of the easterly end of timber breakwater; thence N. 63° 51' W. parallel to said timber breakwater a distance of 111.0 feet to stake "D"; thence parallel to said breakwater a distance of 645.3 feet to stake "E" set on the southerly line of a gravel bar and 20 feet northerly at right angles from the Boise river face of said timber breakwater; thence N. 75° 33' W. a distance of 97.5 feet along the southerly edge of said gravel bar to an intersection with the said timber breakwater. The total length of proposed breakwater is 885.4 feet.

The appellants are also required to remove the said dam or breakwater heretofore erected by appellants from its present location between the eastern end of said breakwater as presently constructed and extending westerly to stake "F" designated on Exhibit "A" and described above, where the present embankment joins the breakwater stake and designated above by Engineer Scharf and described on the map Exhibit "A."

The appellants are granted permission to maintain the present embankment from the point designated by the letter "F" on the survey of Engineer Scharf westward as presently erected, and to erect an embankment beginning at line "G" established on Exhibit "A" by Engineer Scharf, and as indicated by the dotted line designated by the engineer extending westerly from stake "G" to stake "F" a distance of 885.4 feet, where it connects with the present embankment at that point.

The trial court is also directed to amend his findings and judgment in accordance with the foregoing modification of the opinion.

The costs of the appeal are awarded to the appellants, except the cost of the survey by the engineer appointed by this court, and this cost is allowed in the sum of $27.75 and taxed against the appellant.

Ailshie, C. J., and Sullivan, J., concur.